# APPENDIX 9

# Excerpts from Defendant's Response to Plaintiff's Second Set of Request for Admissions

# Page(s) 114-116

**RESPONSE:**

Objected to; admitted in part; denied in part. Defendant objects to the use of the term "anyone" as overbroad, vague and ambiguous in that the term encompasses people lacking in the requisite computer literacy and also lacking the information necessary to access the remote internet voting system. As a factual matter, in order to log-in to the remote internet voting system, a person needed to have more information than a voter's employee identification number and personal identification number. *See* Objection to Definition No. 3. Access to those two numbers, moreover, was restricted both by the AAA and the APA, which itself did not have access to or possession of personal identification numbers. Defendant also objects to the Request as vague and ambiguous because it lacks any time referents, and certain election-related information was only available at certain points in time. Admitted that, as in all voting systems employed in LMRDA covered elections, it was theoretically possible for a person with the requisite information and skills illicitly to tamper with the system at certain points in time so as to learn how a voter had voted. However, there is no evidence in this case to suggest that anyone did so or even attempted to do so.

2. During the 2004 APA national officer election and run-off election, the APA had access to each voter's employee identification numbers and personal identification numbers.

**RESPONSE:**

Denied. The APA had no access to the personal identification numbers of voters.

3. The remote Internet voting system did not allow a voter using that system to see whether his or her vote had been viewed by anyone else.

4

114

**RESPONSE:**

Denied as phrased. Contrary to the categorical assertion in the Request, the system did in fact "allow" a voter to "see" that someone had viewed his or her vote if that person had viewed the vote in the context of either changing the vote or revoting the vote in the same way. Only if a theoretical interloper had illicitly entered the system and merely viewed a voter's vote without changing or revoting the vote would the system have not reflected that fact when the voter entered the system to view his/her vote. However, if a voter had a suspicion that his vote had been "viewed" or otherwise accessed, the voter could have brought the matter to the attention of the AAA, whose computer system consultant, Jon Ohmann, could have checked – and can still check – the running list of log-ins to the system to determine if suspicious patterns of log-ins existed. No such suspicious patterns occurred in the election at issue in this lawsuit.

4.  During the 2004 APA national election and run-off election, the remote Internet voting system allowed persons other than the voter to determine how a specific voter had voted.

**RESPONSE:**

Defendant objects to the use of the term "allowed" as vague and ambiguous in context. To the extent that "allowed" suggests that the system was designed to or did facilitate or sanction such access, the Request is denied. To the extent "allowed" is to be read to indicate that, if a would-be interloper gained access to certain pieces of information and took certain actions at certain points in time, it was theoretically possible for that person to gain illicit access to the information at issue, the Request is admitted.

115

had access to this information or that any such employee had "possession" of such numbers.

7. Jon Ohmann was in possession of each voter's employee identification number and personal identification number.

**RESPONSE:**

Denied that Mr. Ohmann was "in possession" of such information, but admitted that Mr. Ohmann, in order to fulfill his responsibilities as the Administrator/Manager of AAA's remote internet voting system, had remote access to a secure computer server containing a database with the information at issue. Mr. Ohmann never made use of any such information in a way that compromised ballot security or secrecy.

8. The American Arbitration Association used a printing company to print the instructions for voting mailed to voters in the 2004 APA national election and run-off election.

**RESPONSE:**

Admitted.

9. The printing company referenced in Request for Admission No. 8 was in possession of the employee identification number and personal identification number of each voter in the 2004 APA national election and run off election.

**RESPONSE:**

Admitted to the extent that a single official of the printer, the production manager, created the personal identification numbers for secure transmission to the AAA and thereafter securely maintained the information at issue, initially in a computer archive and subsequently on a CD, to which only the production manager had access. At no time after the creation and transmission of the personal identification numbers to the AAA did