# APPENDIX 11

*Reich v. United Mine Workers of America*

Page(s) 119-125

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents

United States District Court, District of Columbia.
Robert B. REICH, Plaintiff,
v.
UNITED MINE WORKERS OF AMERICA,
Defendant.
**Civil A. No. 94-1691 (RCL).**

Oct. 24, 1995.

MEMORANDUM OPINION

LAMBERTH, District Judge.
*1 This matter comes before the court on the parties' cross-motions for summary judgment. Upon consideration of the parties' submissions and the relevant law, for the reasons set forth below, the court shall grant plaintiff's motion for summary judgment, and deny defendant's motion for summary judgment.

I.

BACKGROUND

The Secretary of Labor brings this action under Title IV of the Labor Management Reporting and Disclosure Act, 29 U.S.C.A. §§ 401-531 (1985) ( " LMRDA"), challenging a February 8, 1994, election held by District 22 of the United Mine Workers of America. District 22, an intermediate labor organization within the meaning of section 401(d) of the LMRDA, 29 U.S.C.A. § 481(d) (1985) , is chartered by and subordinate to the United Mine Workers of America ("the International"). District 22 held the February 8, 1994, election to select the District's president, vice president, secretary-treasurer, subdistrict board members, district auditors, and District 22's representative on the International Executive Board ("IEB"). The circumstances surrounding the election of the IEB Member give rise to the instant action.

Following the election in which Clyde Wayman beat Rex Van Wagoner, III, by ten votes, for the position of the District's IEB Member, Van Wagoner filed a timely protest with District 22's District Election Committee, alleging ten instances of misconduct in the election. On March 11, 1994, the District Election Committee found that three of Van Wagoner's allegations of misconduct had merit, and the Committee ordered that a new election be held for the office of IEB Member. The Committee also advised Van Wagoner and his opponent, Clyde Wayman, of their right to appeal to the International Executive Board. Both Van Wagoner and Wayman appealed. In a letter dated May 5, 1994, the IEB informed Van Wagoner that the IEB had denied his appeal of the District Election Committee's ruling. The IEB did, however, grant the appeal of Wayman and certify him as the IEB Member for District 22. This decision specifically overruled District 22's District Election Committee's earlier decision to hold a new election.

After receiving this letter denying his claims, Van Wagoner filed a timely complaint with the Department of Labor pursuant to section 402(a)(1) of the LMRDA. See 29 U.S.C.A. § 482(a)(1) (1985) . The Department conducted its own investigation and concluded that District 22 had committed two violations of the LMRDA, and that the violations may have affected the outcome of the election. Subsequently, the Secretary of Labor brought this action against the International to have the election declared a nullity and to require a new election under the supervision of the Secretary. See 29 U.S.C.A. § 482(c) (1985).

Regarding the specific violations, the Secretary first alleges that the election violated section 401(a) of the LMRDA because the election was not conducted by secret ballot. See 29 U.S.C.A. § 481(a)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. <span style="float:right">Page 2</span>

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

. The alleged violation stems from sequential numbering that appeared on the ballots. Due to a printing error, each ballot displayed a unique, sequential number. During the election, at least some of the ballots were distributed in order, and the voters signed a numbered sign-in sheet that corresponded to the order of the ballots. As a result, plaintiff contends, it was possible to determine how each member voted.

*2 The Secretary also alleges that the election violated section 401(e) of the LMRDA because Local 6363 did not mail election notices to its members at least fifteen days prior to the election. *See* 29 U.S.C.A. § 481(e) (1985). Additionally, notices were not sent to Local 1620; instead, the notices were posted in the union hall and several other locations around the Peabody Black Mesa Mine. The Secretary alleges that this also violated the LMRDA.

Complainant Van Wagoner, however, is not without troubles of his own. On March 10, 1994, Mike Dalpiaz, president of District 22, filed a complaint with the District Executive Board alleging that Van Wagoner had used District 22 funds to obtain his own campaign materials. On April 9, 1994, the District Trial Committee heard the charges against Van Wagoner and unanimously found Van Wagoner guilty of misappropriation of union funds and fraud in a union election. The Committee barred Van Wagoner from holding any union office for the next five years, and it suspended him from all membership activities during that time. Van Wagoner appealed the decision to the IEB on April 15, 1994, arguing that the Committee was biased and could not give him a fair trial. The Appeals Commission of the IEB upheld the Trial Committee's conclusion that Van Wagoner had misappropriated union funds, and it affirmed the punishment. After receiving this decision on August 1, 1994, Van Wagoner appealed to the International Convention that same day. This appeal is still pending.

II.

LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322.

III.

ANALYSIS

A. *Proper Party*

Defendant contends that the dispositive issue in this case is whether the International can be said to have conducted the February 8, 1994, election within the meaning of the LMRDA. The parties do not dispute that District 22 conducted the election; the question is whether the court can attribute the actions of the District to the International. Plaintiff alleges that the International is the proper party because the office in question, the IEB Member, is part of the governing body of the International, not the District. Moreover, plaintiff contends that District 22 acted as the agent of the International when it conducted the election.

*3 The International, on the other hand, argues that regardless of the merits of the Secretary's claims, it is not the proper party in this action. It claims that District 22, an autonomous labor organization under the LMRDA, conducted the election, and, as a result, the District is solely responsible for any violations. Despite defendant's belief in the autonomy of District 22 and its elections, the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 3

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

finds that the International is a proper defendant because of the review and actual control exercised over the District.

### 1. *Statutory Scheme*

Under the LMRDA, a member of a labor organization who has exhausted all available administrative remedies may complain to the Secretary of Labor about an election believed to have violated the Act. 29 U.S.C.A. § 482(a) (1985). After a complaint has been lodged, the Secretary then investigates the allegations. If the Secretary finds violations of the LMRDA, the Secretary will bring a civil action against the labor organization in the district court where the organization is located. *Id.* at § 482(b). Finally, after a trial on the merits, if the court finds that the election violated section 401 of the LMRDA and that this violation may have affected the outcome of the election, the court can order that a new election be held under the supervision of the Secretary of Labor. *Id.* at § 482(c)

### 2. *The International's Liability*

Another judge of this court has previously considered and rejected the International's argument that the Secretary cannot hold it responsible under the LMRDA for one of its district's elections. In the case of *Dole v. United Mine Workers of America,* Civ. No. 89-2058 (D.D.C. January 29, 1990), the International argued then, as it does now, that the Secretary cannot hold the International liable for the election improprieties of its districts. Arising from a similar set of facts, the Secretary brought the action against the International to set aside District 17's election of its IEB Member. When Judge Richey of this court indicated to the International that he was inclined to grant the Secretary's motion for summary judgment, the International did not take the opportunity to argue its position, instead stating that it would stand on its papers. Judge Richey then issued an order granting the Secretary's summary judgment motion, necessarily rejecting the International's argument that it was not the proper party. That court then voided District 17's election and ordered a new election under the Secretary's supervision. *See Dole v. United Mine Workers of America,* Civ. No. 89-2058 (D.D.C. January 29, 1990) (unpublished order of Judge Richey). This court now reaches the same conclusion and holds that the International has sufficient control over and responsibility for District 22's election of its IEB Member to be a proper party under the LMRDA.

The International demonstrated the control over and responsibility for District 22 when it reversed the District Election Committee and certified Clyde Wayman as the District's member on the IEB. The International argues in its summary judgment papers that District 22's constitution governed the election at issue. Yet that same constitution provides that a dissatisfied member may appeal election issues to the International if the member is dissatisfied with the District Election Committee's decision. *See* District 22's Const., art. XI, § 38, ¶ 2 ("Any member adversely affected by any decision of the District Election Committee shall have the right to appeal to the International Executive Board within fifteen days following the certification of the election results."). Indeed in this case, the IEB, on April 28, 1994, adopted the recommendation of the Appeals Commission and reversed the District Election Committee's order that a new election be held, instead ordering the immediate certification of Clyde Wayman as District 22's IEB Member. This court cannot accept that the International lacks sufficient control to be liable under the LMRDA when it directly reviews and determines District 22's election issues and results. Although the districts of the UMWA have some autonomy, that autonomy does not extend to the election of their IEB Members.

*4 With respect to the autonomy of the districts, the International correctly points out that a line of cases holds that the districts, including District 22, are themselves labor organizations within the meaning of the LMRDA. *See Hodgson v. United Mine Workers of America,* 344 F. Supp. 990, 998-99 (D.D.C. 1972), *aff'd sub nom, Brennan v. United Mine Workers of America,* 475 F.2d 1293 (D.C. Cir. 1973) (concluding that the UMWA's so-called " provisional districts"are labor organizations); *Monborne v. United Mine Workers of America,* 342

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

F. Supp. 718, 722 (W.D. Penn. 1972) (finding that District 2 is a labor organization); *Cross v. United Mine Workers of America,* 353 F. Supp. 504, 507 (S.D. Ill. 1973) ("[T]his Court finds as a matter of law, that District 12 of the UMW is a labor organization engaged in commerce within the meaning of Title 29 U.S.C., Sec. 402(i)."). These cases also find that the districts are autonomous labor organizations within the meaning of the LMRDA. *See, e.g., Hodgson,* 344 F. Supp. at 994-999 (finding that all UMWA districts, including District 22, are autonomous).

This line of cases arose during a time when the International maintained trusteeships over certain so-called "provisional" districts. Under the LMRDA, a dominant labor organization can maintain a trusteeship over a subordinate body in order to correct corruption or problems arising within the subordinate. *See* 29 U.S.C.A. § 462. The LMRDA presumes that a trusteeship maintained over eighteen months is invalid, unless the labor organization can show by clear and convincing proof that the trusteeship is still necessary. *Id.* at § 464(c). In these cases, the Secretary challenged the trusteeships that the International had maintained over its districts in excess of eighteen months. The International argued that the districts were not labor organizations within the meaning of the LMRDA, and accordingly were not subject to the trusteeship limitations under the Act. *See, e.g., Brennan v. United Mine Workers of America,* 475 F.2d at 1295. The courts found that the districts were subordinate, yet autonomous labor organizations under the LMRDA. Thus, the International could not maintain a trusteeship over the districts in violation of the LMRDA.

The International would now equate the finding that the districts are labor organizations for the purposes of the LMRDA to its contention that it has no control over District 22's election of its IEB Member. This equation does not balance. The cases discussed found that the districts are subordinate to the International. A district can be an autonomous labor organization for the purposes of trusteeship analysis and still remain subordinate to the International. That District 22 is a labor organization under the LMRDA does not mean that its elections are not subject to the control of the International. Indeed, the undisputed facts in this case show that the International directly controlled the outcome of the election. Consequently, the trusteeship cases do not require a different result in this case.

**\*5** In light of the explicit control authorized and, in this case, exercised by the International over District 22's election, the court now holds that the International is liable under the LMRDA. *Cf. Hodgson v. United Mine Workers of America,* 344 F. Supp. 17 (D.D.C. 1972) (holding that local election officials act as agents of the International when conducting elections for International president, vice-president, and secretary-treasurer).

### B. *Violations of the LMRDA*

#### 1. *Exhaustion of Remedies*

The LMRDA requires a complainant to exhaust all internal union remedies available under the union's constitution before lodging a complaint with the Secretary of Labor. *See* 29 U.S.C.A. § 482(a) (1985). District 22's constitution provides for the following internal remedies:

Any objections to the conduct of the election, complaints of denial of rights relating to the election, or protests to the outcome of the election shall be made to the District Election Committee within fifteen days after the election.... Any member adversely affected by any decision of the District Election Committee shall have the right to appeal to the International Executive Board within fifteen days following the certification of the election results.

District 22's Const., art. XI, § 38, ¶ 2.

The undisputed facts show that Van Wagoner made a timely protest to District 22's District Election Committee. Van Wagoner then made a timely appeal to the IEB. After the IEB denied Van Wagoner's appeal, he lodged a timely complaint with the Department of Labor. The court now finds that Van Wagoner exhausted the remedies available

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 5

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

to him as required by the LMRDA.

### 2. Secrecy

In light of the undisputed facts in this case surrounding the sequential numbering of the ballots cast in the election, the court now finds that the ballots were not secret within the meaning of the LMRDA. Section 401(a) of the LMRDA requires that elections for officers be held by secret ballot. *See* 29 U.S.C.A. § 481(a). The LMRDA defines " secret ballot" as

the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.

*Id.* at § 402(k). As the definition indicates, the secret ballot right extends beyond just voting in secret to secrecy after the member casts the ballot. *See Reich v. District Lodge 720, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO,* 11 F.3d 1496, 1500 (9th Cir. 1993). "Any post-voting device by which it can be determined how a particular voter voted would be a violation of secrecy (such as signatures or *other identifying marks on the ballot,* ...." *Bachowski v. Brennan,* 413 F. Supp. 147, 149 (W.D. Penn. 1976) (emphasis added). The *Bachowski* court further noted that "[a]ny violation of the right to secrecy either at the time of voting or by subsequent procedures of handling the ballots constitutes a substantive and material infringement of the voter's rights, ...." *Id.* The Third Circuit found a violation of the secret ballot provision when "*some* voters *could* have been identified with their choices." *Marshall v. Local Union 12447, United Steel Workers of America, AFL-CIO,* 591 F.2d 199, 203 (3d Cir. 1978) (emphasis original).

*6 The undisputed facts in this case indicate that the election breached the secrecy requirement of the LMRDA. The printer stamped each ballot in the election with a unique, sequential number. In at least some cases, election officials handed the ballots out sequentially while the voters signed a numbered registry. By matching the registry with the ballots handed out, union officials could determine how a member voted. In fact, the District Election Committee did just that when it invalidated a ballot cast by an ineligible member. Because of the election official's ability to identify how members voted, the court finds that the election violates the LMRDA's secret ballot requirement.

### 3. Notice

Defendant's failure to timely mail notice of the election to all of its members entitled to vote violates the express notice requirement of the LMRDA. The LMRDA commands that

[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address.

29 U.S.C.A. § 481(e). Without question, Local 6363's failure to mail the election notices to its members fifteen days prior to the election violated the LMRDA's requirement. Local 1620's failure to mail notice of the election to any of its members also violated the LMRDA's notice provision.

### 4. Affect on the Outcome of the Election

Finally, the court must determine whether the violations of the secrecy and notice provisions of the LMRDA may have affected the outcome of the election. Under the LMRDA, in order for the court to grant the relief sought by plaintiff, that is, to declare the election void and order a new one under the plaintiff's supervision, the court must first find that the violations of the Act may have affected the outcome of the election. *See* 29 U.S.C.A. § 482(c)(2). Although this determination can be quite difficult, in this case, the court has little trouble concluding that the violations may have affected the outcome.

The Supreme Court determined in *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 506-07 (1968), that once the Secretary has shown a violation of section 401 of the LMRDA, the Secretary has also established a prima facie case

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

that the violation may have affected the outcome of the election. *Accord Reich v. District Lodge 720, Intn'l Assc'n of Machinists and Aerospace Workers, AFL-CIO,* 11 F.3d at 1499 (citing *Wirth*). A defendant must meet this case with evidence that the violation did not affect the result. *Id.* at 507.

This court has now determined that the election violated section 401 of the LMRDA. Thus, under *Wirth,* the Secretary has made out a prima facie case that the violations may have affected the outcome of the election. In its opposition to plaintiff's motion for summary judgment, defendant did not raise a single argument against finding that the violations may have affected the outcome of the election. In fact, defendant never addressed the violations or their impact in any of its summary judgment submissions to the court. Defendant has failed to rebut plaintiff's prima facie case, and the court finds that the violations may have affected the outcome.

*7 Additionally, the court also finds that the defendant has conceded that the election violated the LMRDA and that these violations may have affected the outcome of the election. The defendant never addressed the merits of the Secretary's allegations that the election was not conducted by secret ballot and that some members did not receive proper notice. In its opposition to the plaintiff's motion for summary judgment, the defendant merely referred to its own motion for summary judgment in which it contended that the International was not a proper party. Accordingly, the court takes defendant's failure to raise any argument against the plaintiff on the substance of the allegations to be a concession by the defendant.

IV.

CONCLUSION

For the foregoing reasons, the court will grant plaintiff's motion for summary judgement, and the court will deny defendant's motion for summary judgment.

A separate order shall issue this date.

ORDER

For the reasons stated in the accompanying memorandum of this date, it is hereby

(1) ORDERED that plaintiff's motion for summary judgment is granted;

(2) ORDERED that defendant's motion for summary judgment is denied;

(3) ORDERED that the court hereby declares the defendant's February 8, 1994, election for the office of International Executive Board Member to be null and void; and it is further

(4) ORDERED that the defendant is directed to conduct a new election for the office of International Executive Board Member under the supervision of the plaintiff.

SO ORDERED.

> FN1. District 22 is comprised of 18 locals throughout Wyoming, Utah, and Arizona.
>
> FN2. The other offices were uncontested elections. Because the Secretary has not challenged these elections, they are not before this court.
>
> FN3. District 22's constitution provides that
> [a]ny objections to the conduct of the election, complaints of denial of rights relating to the election, or protests to the outcome of the election shall be made to the District Election Committee within fifteen days after the election.
> District 22's Const., art. XI, § 38, ¶ 2. Van Wagoner made his protest on February 22, 1994.
>
> FN4. District 22's constitution further states that
> [a]ny member adversely affected by any decision of the District Election Committee shall have the right to appeal to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

124

Not Reported in F.Supp.                                                                                      Page 7

Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120
**(Cite as: Not Reported in F.Supp.)**

the International Executive Board within fifteen days following the certification of the election results.
District 22's Const., art. XI, § 38, ¶ 2.

FN5. Section 482(c) provides:
If, upon a preponderance of the evidence after a trial upon the merits, the court finds--
(1) that an election has not been held within the time prescribed by section 481 of this title, or
(2) that the violation of section 481 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization.
29 U.S.C.A. § 482(c).

FN6. Section 481(a) provides:
Every national or international labor organization, ... shall elect its officers not less often than once every five years either by *secret ballot* among the members in good standing or at a convention of delegates chosen by secret ballot.
29 U.S.C.A. § 481(a) (emphasis added).

FN7. The Election Committee instructed the printer to print sequential numbers above the perforated portion of each ballot. Local election officials were supposed to tear off the perforated portion containing the number before issuing the ballot to a voter. However, the printer erroneously put the sequential numbers on the main portion of the ballot.

FN8. Section 481(e) provides:
Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address.
29 U.S.C.A. § 481(e). Lloyd Vance, chief election teller for Local 6363 stated that he mailed the notices for the February 8, 1994, election on January 29 or 31, 1994, nine to eleven days before the election.

FN9. In particular, Van Wagoner was found to have used the District's assets as collateral to obtain credit from a vendor of campaign materials.

FN10. "[T]he LMRDA's secrecy mandate extends not only to the actual casting of ballots but also to any post-voting procedure designed to determine how individual union members voted or would have voted." *Id.*

FN11. Election Committee member Wilfred M. Vigil gave the following statement in his affidavit:
During the recount of the ballots [cast in the election at issue], the district election committee discovered that one of the locals allowed an ineligible member to vote. The local tellers were later able to identify the voter's ballot by comparing the number on the ballot to a numbered sign-in sheet which corresponded to the order in which ballots were issued.
Declaration of Wilfred M. Vigil, March 21, 1995.
D.D.C.,1995.
Reich v. United Mine Workers of America
Not Reported in F.Supp., 1995 WL 791950 (D.D.C.), 151 L.R.R.M. (BNA) 2120

Briefs and Other Related Documents (Back to top)

• 1:94cv01691 (Docket) (Aug. 04, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.