UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

_____
                                    )
ELAINE CHAO, SECRETARY              )
OF LABOR,                           )
                                    )
            Plaintiff,              )   Case No. 4-05CV-338Y
                                    )
       v.                           )   Judge Terry R. Means
                                    )
ALLIED PILOTS ASSOCIATION,          )
                                    )
            Defendant.              )
_____)

### ALLIED PILOTS ASSOCIATION'S REPLY TO
### DEPARTMENT OF LABOR'S RESPONSE TO BRIEF AMICUS CURIAE

Pursuant to this Court's August 16, 2006, Order, the Allied Pilots Association ("APA") respectfully submits this Reply to the Department of Labor's ("DOL") Response ("Response") to the *Amicus Curiae* brief accepted for filing by the Court.

1.   Consistent with its approach throughout this case, the Response attempts to persuade this Court to decide the case in a factual vacuum: i.e., by eliminating from consideration the nature and features of other union election systems, the ballot secrecy protection standards applied to them by the DOL and particularly the fact that all voting systems, including those expressly approved by the DOL and the courts, are theoretically vulnerable to ballot secrecy compromise. The Response specifically contends that the electronic voting system employed by *amicus* Allied Union Services ("AUS") in hundreds upon hundreds of union elections is essentially irrelevant to the case at hand. Response at 2.

The Response makes that argument even though 1) the AUS system employs the same dual database structure employed by the American Arbitration Association ("AAA") in the 2004 APA election -- the feature, the DOL charges, that violated ballot secrecy here -- and 2) the DOL has previously approved the use of the AUS system in the DOL-supervised 2001 Southwest Pilots Association ("SWAPA") election.  APA Brief in Opposition to Plaintiff's Motion for Summary Judgment ("APA Br.") at 22-23.  While the DOL contends that it does not "pre-approve" elections systems, Response at 4 n.2, that claim is disingenuous because the agency gave permission for SWAPA to use the AUS system on the express condition that the system adequately protect ballot secrecy, the lack of which had led to the nullification of the previous SWAPA election.  APA Br. at 22, Nos. 93-94; APA Br. Appendix (App.) at 549-50.

Notwithstanding the DOL's reference to the alleged differences between the two, the only functional difference between the AUS system used in the 2001 SWAPA election and the AAA system is that the AUS system enabled a voter to select his or her own PIN number.  Response at 4 n.1, citing APA Br. App. at 582-83.  That feature, however, did nothing to eliminate the theoretical ability of AUS personnel to access and link the system's two databases (one with the voter's personal information; the other with the voter's vote) - precisely the alleged "flaw" the DOL contends violated secrecy in the APA election.  APA Br. at 22-23, No. 95.[1]

---

[1] As demonstrated in the APA's summary judgment brief, such potential linkability of voter and vote is inherent in any voting system and is actually required for voter eligibility determination purposes.  See APA Br. at 38-46.

The DOL's attempt to eliminate all pertinent comparisons to other election systems for determining the adequacy of the ballot secrecy protections in the AAA system is wrong in a most fundamental way. Put simply, the question to be decided here is whether the AAA system met the standard for protecting ballot secrecy as applied by the DOL under the governing statute in other union elections. That question can only be answered by reference to other voting systems that have passed ballot secrecy muster.

2. That the *amicus* brief makes some of the points concerning electronic voting raised by the APA in its filings, see Response at 2, is hardly surprising given that the DOL-approved AUS system and the AAA system are functionally identical. Accordingly, the *amicus* brief is useful to the Court not simply to establish that electronic voting is no anomaly but also to show that the DOL is attempting in this case to change the secrecy protection standard it has applied in other elections conducted by electronic means.

The *amicus* brief also tracks some of the points made by the APA with respect to non-electronic voting systems because, like the AAA system, the AUS system incorporates, and constitutes an advance over, the secrecy protections offered by those non-electronic systems. See *Amicus* Brief at 2-6; cf. APA Br. 9-10; 40-46. In this regard, AUS makes one particularly significant point not presented by the APA -- namely, that the DOL's approval of mail ballot systems rests in significant part on a "level of trust . . . to disinterested third parties," Response at 3, quoting *Amicus* Brief at 3 -- a level of "trust" the DOL flatly declines to accord the well regarded AAA in this case. The Response confirms the *amicus*' point when, without any factual support, it

3

acknowledges the DOL's full confidence in postal workers to maintain ballot secrecy in mail ballot elections.  It trumpets that confidence even though there is no requirement in the DOL regulatory framework that postal workers do anything more in a union election than process election mail in the same way that they process any other form of mail.[2] Paradoxically, finally, the DOL would place such faith in an unknown number of anonymous postal workers at the same time it incorrectly criticizes the AAA for giving an "unknown number of employees" "nearly unfettered access" to information that allegedly could have been used -- but was not used -- to compromise ballot secrecy in the 2004 APA election.  Response at 3.

    As odd as that double standard is on its face, it becomes utterly unsustainable when one considers that each of the AAA and contractor personnel with any access to such information has been identified in this case; and each was held to the demanding secrecy protection standards of the AAA, an organization that has conducted thousands of union elections and vitally depends for its very survival on its reputation for security in the election context.  APA Br. at 18-22, Nos. 71-92.  The very fact that the DOL feels the need to apply this double standard suggests that it has no intention of administering the governing statute in an evenhanded manner in this case.[3]

---

[2] DOL regulations do not require the USPS to store or safeguard ballots prior to vote tally.  29 C.F.R. §§ 452.98, 452.107(c).

[3] The DOL's proclamation that "proper double-envelope mail balloting" has been deemed, by regulation, to meet the statutory secrecy standard raises similar questions about the DOL's entire approach to this case.  Response at 3.  In so asserting, the DOL neglects to mention that it has also deemed compliant single envelope mail balloting -- i.e., without the protective secret ballot envelope -- even though that system presents substantially more risk of ballot secrecy violation than the AAA system.  APA Br. at 7, Nos. 19-20.  Indeed, if the AAA had used an equivalent method electronically, it would have placed both the voter's personal information and his/her vote in a single electronic "envelope" (i.e., database).

3.      In the end, the Response seems to abandon logic altogether when it suggests that electronic voting may be unlawful under the LMRDA and recommends that purveyors of such voting are best advised to lobby Congress for changes to the statute. Response at 5.  In point of actual fact, the statute in no way prohibits electronic voting. Moreover, ballot secrecy was protected in the 2004 APA election to a level at or above the requirements of the statute and certainly consistent with the standard set by DOL in the supervised 2001 SWAPA election and the standard it has applied in mail ballot elections.  In seeking to prevent this Court from considering the standard actually applied in other contexts, the DOL is effectively asking the Court to give it authority to legislate a new extra-Congressional ballot secrecy standard unique to the particular election at issue here.  The APA respectfully submits that the Court should decline that invitation.

## **CONCLUSION**

For the reasons stated above, this Court should take full advantage of the considerable assistance offered by the *amicus* brief it has already accepted for filing.

Respectfully submitted,

s/ Sanford R. Denison
SANFORD R. DENISON
Texas Bar No. 05655560
BAAB & DENISON, LLP
Stemmons Place, Suite 1608
2777 N. Stemmons Freeway
Dallas, Texas 75207
(214) 637-0750; (214) 637-0730 Fax

5

        Edgar N. James (admitted *pro hac vice*)
        D.C. Bar No. 333013
        Steven K. Hoffman (admitted *pro hac vice*)
        D.C. Bar No. 384696
        David P. Dean (admitted *pro hac vice*)
        D.C. Bar No. 437030
        JAMES & HOFFMAN, P.C.
        1101 17th Street, N.W., Suite 510
        Washington, D.C. 20036
        (202) 496-0500; (202) 496-0555 Fax

        Counsel for Defendant Allied Pilots Association

Dated:  August 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2006 I electronically filed the forgoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

>
> TAMI C. PARKER
> Assistant United States Attorney
> Burnett Plaza, Suite 1700
> 801 Cherry Street, Unit 4
> Fort Worth, Texas 76102
>
> JEFFREY B DEMAIN
> JONATHAN WEISSGLASS
> Altshuler Berzon Nussbaum Rubin & Demain
> 177 Post Street, Suite 300
> San Francisco, CA 94108
>
> YONA ROZEN
> Gillespie Rozen Watsky Motley & Jones
> 3402 Oak Grove Ave, Suite 200
> Dallas, TX 75204

>
> s/ Sanford R. Denison
> SANFORD R. DENISON