**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Honorable Elaine L. Chao, Secretary, United States Department of Labor | ) ) | |
| Plaintiff, | ) | |
| and | ) ) | No. 4:05 CV 0338 Y |
| Mark L. Hunnibell | ) | |
| Plaintiff-Intervenor, | ) | Judge Terry R. Means |
| v. | ) ) | |
| Allied Pilots Association, | ) | |
| Defendant. | ) | |

**PLAINTIFF-INTERVENOR'S RESPONSE
TO JOINT MOTION FOR CASE RESOLUTION**

Plaintiff-Intervenor Mark L. Hunnibell ("Hunnibell") replies in conditional support of the March 30, 2007, Joint Motion for Case Resolution ("Joint Motion"). Hunnibell supports the effect of the Joint Motion with two substantive exceptions: The entitlement of the Plaintiff, the U.S. Department of Labor ("DOL), to allow Defendant Allied Pilots Association ("APA") to conduct the 2007 APA National Officer Election using Allied Union Services' "BallotPoint," and the DOL's handling of protests.

The underlying Stipulation of Settlement ("Stipulation") allows the DOL to pre-satisfy themselves that BallotPoint appears to comply with the LMRDA. If the DOL is satisfied, APA could rationalize prior conduct and ignore the basis of the suit. The DOL asked APA to re-run the election and only filed suit after APA refused. This Court has concluded that APA violated the law, leaving to trial the question of whether APA's violation may have affected the outcome. The risk of such violations affecting the outcome is why the DOL filed suit. Thus, the only way the membership would *not* be harmed if it was disposed of in the proposed manner is if the suit was without merit.

**BACKGROUND**

The chronology suggests that the reason that there is now a Joint Motion in the middle of the current election is due to the DOL's failure to prosecute in a timely manner: <u>APA employed typical delay tactics</u>.

After receiving Hunnibell's complaint on October 15, 2004, the DOL obtained (from APA) at least five extensions of the 60-day deadline for filing suit. The DOL eventually filed suit in May 2005.[1] APA has demonstrated no interest in timely resolution and has apparently spared no expense to delay the process. The delay in timely resolution of election violations is a longstanding problem also discussed in the doctoral thesis of APA's General Counsel almost 30 years ago.[2]

---

[1] May 2005 was seven months after the DOL received Hunnibell's complaint and almost a year after the protested election.

[2]   "…flexibility has not been a characteristic of LMRDA enforcement.[177] Delay, on the other hand, has been. The filing deadline of sixty days is regularly extended with the defendant's consent – expedition is usually not in the defendant's interest, and the average adjudicated claim takes two years and seven months to reach a final order.[178] Because of the nature of insurgent opposition, lengthy delay and the attendant expense make for pyrrhic legal victories."
*Edgar N. James*, HARVARD CIVIL RIGHTS-CIVIL LIBERTIES LAW REVIEW 13(2), 247 at 299 (1978)

"Extreme judicial deference to agency determinations, so characteristic of the administrative vision, has no place here as there is an independent standard for the court to apply. Procedurally, this means that the court must be aware that the agency's enforcement perspective is not all-determining. Advocacy by other persons may be of great assistance to the court in enforcement adjudication. So, for example, a complainant in an LMRDA enforcement action should generally be permitted to intervene.[183]"

> [fn183:] "*See generally* Brennan v. Steelworkers, 554 F.2d 586 (3d Cir. 1977), *cert. denied*, 98 S. Ct. 1627 (1978); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv. L. Rev. 721, 746 (1968) ('But the very fact that the intervener – from the vantage point of his own interest – sees the case with a perspective and perhaps an intensity different from that of the agency charged with the protection of the public as a whole may indicate that he can in fact contribute to the court's total understanding.')."

"It is not surprising that the public interest in title IV enforcement has been construed 'administratively' and the complainant interest largely ignored, for the debate was framed by the Labor Department and the defendant unions before the courts."
*Id.* at 301

<u>The DOL moves for summary judgment in May 2006</u>.

On May 5, 2006, the DOL filed a Motion for Summary Judgment ("SJ Motion"). The DOL urged prompt action by the Court on the SJ Motion.[3] By August 25, 2006, the SJ Motion was ripe for decision, but the DOL allowed it to languish.[4]

<u>Hunnibell inquiry prompts action</u>.

On January 11, 2007, APA mailed notice for the 2007 Election to all members. Two weeks later, on January 29, 2007, Hunnibell called the Court to inquire about the SJ Motion and learned its disposition had been overlooked. On February 9, 2007, the Court ordered a pre-trial conference and, on February 20, 2007, rejected the SJ Motion. The impetus to the parties to reach agreement was the Court's February 9, 2007 order.[5] Unfortunately, the DOL also had to be prompted to act in 2004 after concluding in 2002 that APA had violated the law during the 2001 APA National Officer Election.[6]

---

[3] "As soon as practicable, and if at all possible before the 2007 APA elections, the 2004 elections must be re-run under the supervision of the DOL." [Document 42] *Plaintiff's Reply to Defendant's Opposition to Summary Judgment*, July 21, 2006, at p. 25, ¶ D.

[4] Hunnibell is unaware if the DOL took any action after August 25, 2006 to determine the status of their SJ Motion or to seek a decision in time to resolve the case prior to the commencement of the next election which would begin in January 2007.

[5] *See* Joint Motion for Case Dispositon [Document 53], p. 2, ¶ 4.

[6] After the APA 2001 National Officer election, Hunnibell complained regarding several violations of the LMRDA. Although the DOL investigation revealed one or more violations, the DOL concluded that the violation(s) did not affect the outcome. In a March 27, 2002, letter to Hunnibell, the DOL informed him that, *"Several months prior to the next scheduled APA officer election, an OLMS investigator will meet with responsible APA officials to discuss election procedures with special emphasis on correcting any deficiencies noted in the investigation of the 2001 election."* On January 20, 2004, Hunnibell contacted the DOL and the learned that the DOL never convened the meetings. The DOL then hastily convened meetings and discovered APA intended to conduct the 2004 election using electronic means and wrote to APA on February 11, 2004: *"It would appear that such a system would have to link the voter and his or her vote in order to permit any vote change. A link between the voter and his or her vote would violate… [the] LMRDA."* One can only wonder if the issues in the instant case would have ever arisen if the DOL had actually engaged in *timely* meetings with APA officials *prior* to the 2004 election.

**ISSUES**

Unnecessary Alteration/Delay of 2007 APA National Officer Election.

The belated Stipulation regarding the conduct of *current ongoing election* process presents undue risk of altering and/or delaying the current election. Considering the parties' unwillingness to resolve the matter in a timely manner and that DOL action under the Stipulation has *already* altered the process,[7] this Court should only approve terms that do not have the potential to delay or further disrupt the process unless *required* by law.

Using BallotPoint would violate the APA Constitution & Bylaws ("APA C&B").

The Stipulation requires the 2007 Election to be conducted according to the LMRDA and, "as lawful and practicable," according to the APA C&B.[8] However, use of BallotPoint would directly violate the APA C&B which states that the "independent disinterested third party" who conducts the balloting for the election under must be the same "independent disinterested third party" who conducts the nomination balloting (*See* APA C&B Article IV, Section 5.D.[9] and 4.D.[10]). BallotPoint did not conduct the

---

[7] The DOL informed candidates on a teleconference on April 4, 2007 that their post-process review of the nomination (which had been administered electronically by AAA) resulted in discovery of some unspecified "issues" that caused the DOL to ask APA (and that APA agreed) to include anyone on the ballot who had been eliminated in the nomination process but wanted to remain a candidate. On this same teleconference, candidates were informed that the DOL investigator supervising the election has not been appointed to do so in writing and she has not presented any credentials to the candidates since (nor has she notified the candidates of the resolution disposition of any of the numerous outstanding items discussed on the call).

[8] Stipulation of Settlement, ¶ 3.(f).

[9] APA C&B, Art. IV, Sec. 5.A. "Subject to the supervision of the Secretary-Treasurer, the independent disinterested third party designated pursuant to Section 4.D. shall also be responsible for the distribution, collection, and counting of the election ballots. The official ballot shall be distributed to all members no less than twenty-one (21) days prior to the date of the vote count."

[10] APA C&B, Art. IV, Sec. 4.D. "The Secretary-Treasurer shall cause to be distributed to each active member in good standing a list of persons willing to be considered for nomination. Each

nomination balloting. The American Arbitration Association ("AAA") conducted the nominations. Thus, in order to even consider using BallotPoint, the DOL must *first* determine that using AAA to conduct the election using mail ballots would either violate the LMRDA or would be impracticable. Second, even if the DOL were to somehow negate the explicit language in the APA C&B and change vendors on some "impracticability" claim, BallotPoint must be disqualified for consideration as an "independent disinterested third party" because BallotPoint is not disinterested. Both BallotPoint and APA stated that BallotPoint has an interest in the litigation underlying the agreement,[11] so BallotPoint is not a "disinterested third party."

<u>It *is* practical for AAA to conduct the election by mail ballot without delay</u>.

When this Court issued its pre-trial conference order on February 9, 2007, APA domicile officer elections were already underway at the BOS, LAX, and ORD Domiciles. APA had contracted to use the AAA electronic systems for these elections. Voting instructions for electronic voting in the elections at these domiciles were to be mailed by AAA to members on February 22, 2007 and were to be counted by AAA on March 15, 2007. However, on February 22, 2007, APA informed members that, because of this

---

member may vote for one (1) person for each office from the list of names provided by the Secretary-Treasurer. An independent disinterested third party shall be responsible for the counting of the nomination ballots."

[11] "Allied Union Services has an interest in the present case, where the Secretary of Labor challenges certain features of the Internet voting system used to conduct an election for the Allied Pilots Association ('APA'). Although Allied Union Services did not participate or assist in the APA election, and although Allied Union Services's voting system is different from the voting system before the Court, the Court's ruling may have implications for Internet and telephone voting generally and may substantially impact Allied Union Services's ability to continue to provide its voting service to its many union clients for elections regulated by the Labor Management Reporting and Disclosure Act." – *Allied Union Services Brief*, June 14, 2006

"AUS has a Cognizable 'Interest' in this Litigation
"First, AUS has demonstrated that it has a direct 'interest' in this case. AUS's core business is conducting union elections via the internet and telephone;" – *APA Brief*, June 14, 2006

Court's February 9, 2007 order, APA had decided to cancel the mailing of electronic voting instructions so that paper ballots could be mailed. Within a week, APA published a revised schedule: AAA would mail paper ballots on March 5, 2007 and would count the ballots at APA headquarters on March 27, 2007.[12] This revised schedule was satisfied.

Thus, it takes only 11 days for AAA to change to paper ballots. In the 2007 APA National Officer Election, voting instructions are to be mailed on May 1, 2007 and 11 days prior to that would be April 20, 2007. Thus, there can be no legitimate claim that a timely order by this Court that the 2007 APA National Officer Election must be conducted by mail (paper) ballot would cause delay, would be illegal, or was impractical. <u>The DOL should not be allowed to give BallotPoint a second bite at the apple</u>.

The DOL reviewed BallotPoint's systems as recently as February 2005.[13] The timing of that review suggests that it was accomplished as part of their investigation in Hunnibell's complaint that led to the instant litigation. If the DOL examined both the AAA and BallotPoint's systems in 2005, it seems inappropriate to provide BallotPoint

---

[12] In deciding to conduct the domicile elections by mail (paper) ballot, it seems APA made the pragmatic decision to conduct the domicile balloting in a manner that would not subject the election to needless challenge regarding denial of members' and candidates' rights to ballot secrecy and right to observe all aspects of the election according to 29 C.F.R. 452.107. While APA acted to eliminate the likelihood of protest of the domicile elections on secret ballot or observation grounds, the provisions of the Stipulation imply that there will be a <u>presumption of legitimacy</u> of the outcome in the 2007 National Officer Election if the DOL is "satisfied that the [BallotPoint] system appears to be consistent with the dictates of Title IV of the LMRDA." An observer in the BOS Domicile election *was* able to observe "the counting and tallying of the ballots and the totaling, recording, and reporting of tally sheets" as required by the LMRDA. The observer witnessed that, when the outcome of one election was decided by just three votes, those tallying the ballots conducted at least two recounts, thus ensuring both the accuracy of the tally, and more importantly, provided the membership complete confidence in the outcome.

[13] "The DOL did seek information regarding CCC's system in 2005. *See* Appx. 33 to Opposition at 586 (noting in a February 11, 2005, letter to the DOL that CCC had received a request for information regarding the architecture of its electronic system from the DOL on February 2, 2005)." [Document 42] *Plaintiff's Reply to Defendant's Opposition to Summary Judgment*, July 21, 2006, at p. 12, footnote 13.

with what is almost certainly to be marketed as a "U.S. Government 'seal of approval'" without providing the same opportunity for other vendors and, in particular, AAA.

<u>Ballot secrecy is not the only problem with electronic election of union officers</u>.

Even if the DOL's re-examination of the BallotPoint system results in their satisfaction that the BallotPoint systems comply with ballot secrecy, it is inconceivable that BallotPoint (or any all-electronic system, for that matter) will allow all candidates to exercise *all* their legal rights to personally observe the function of required election safeguards ensuring that that (1) ballot secrecy was maintained at all times, and (2) all (and only) ballots of eligible members were counted, and (3) all ballots from ineligible individuals were excluded, and (4) any challenged ballots would be set aside and not counted until their eligibility could be determined, (5) ballot tallying was completely accurate, all of which provide candidates and the membership complete confidence that the results of the election accurately reflect the vote of the membership.

<u>The DOL will have a conflict of interest handling any post-election protests</u>.

There is inherent conflict of interest that would arise out of a DOL determination of satisfaction with the BallotPoint system. Candidates in the 2007 APA National Officer Election were informed on April 4, 2007 that any protests regarding the election must be filed exclusively with the DOL within 10 days of the election. The problem is that, to the extent that a candidate or member would complain about the mechanics of an election conducted electronically by BallotPoint, or complain regarding any change in election rules or interpretation of the APA C&B, any finding in favor of the complainant would essentially require the DOL to admit fault with their prior decisions. The DOL might have to admit that their examination of BallotPoint and subsequent "satisfaction with its

7

appearance" was deficient and/or defective in one or more ways. The natural human resistance to admit "my judgment was wrong" creates an unfairly higher and improper standard for protesters to overcome. Thus, any protesters will effectively be prevented from receiving a fair determination from the only agency to which they can complain. <u>Membership confidence in the outcome is paramount</u>.

Hunnibell has heard from and seen APA members express real suspicion regarding the legitimacy of the outcome of electronic elections in APA. At the same time, he is not aware of any concerns ever expressed by any APA member regarding the legitimacy of elections conducted using paper mail ballots (i.e. suspicions of incorrect tallies or ballot fraud). The DOL has properly informed the Court of the lack of statutory relevance regarding APA's citation of representation elections conducted by the National Mediation Board, and may have also pointed out that the LMRDA contains provisions that are unlike those for election of public officials. The lack of direct relevance to public election law not withstanding, in a televised interview on Bloomberg news on November 1, 2006, AAA Vice President - Elections, Mr. Jeff Zaino – who was deposed in this case – made clear the importance of a paper trail in elections, including:

> Bloomberg: Now let me ask you about the question of the paper trail. Some localities, some municipalities, some states require a paper trail, some confirmation of how a vote was cast. Is that, in fact, required in most states? Will Americans have a paper backup if they do vote electronically?
>
> Zaino: Well not for this election, but 27 states have legislation for the voter-verified paper trail by 2008. However, only four states will have the voter-verified paper trail in this election. So we're going to see it down the road, and we think it's a really good idea to have the voter-verified paper trail because public confidence is at an all-time low and if this can help, that's a good thing.

It is not only a "really good idea" to have a verified paper trail in union officer elections conducted under the LMDRA; it also happens to be the law. The LMRDA explicitly

<u>requires</u> that ballots and all records be maintained by the union for one year. In an electronic election, it is impossible for the union to retain ballots and it is impossible for voters or candidate/observers to verify the legitimacy of the process.

## CONCLUSION

In this response to the Joint Motion for Case Resolution, Plaintiff-Intervenor has made clear he supports the majority of the provisions of the Motion but has provided substantiated concerns about two provisions:

<u>BallotPoint's use should not be considered for the 2007 APA National Officer Election</u>.

Such consideration carries with it implication of delay or alteration of the rules for the election that is not necessary to conduct a legal union officer election. Additionally, changing to BallotPoint would violate the APA Constitution and Bylaws in a manner that is not necessary to comply with the law nor is it impractical to use AAA. Clearly, AAA has demonstrated that they can conduct a mail ballot election that complies with all requirements of the LMRDA and APA Constitution and Bylaws, and do so with short notice. BallotPoint is an interested party who should not be provided with a discriminatory "product placement" opportunity, especially when ballot secrecy is not the only problem with electronic election of union officers. Further, if the DOL is *not* satisfied with BallotPoint, AAA is almost certainly going to be solicited to be the "clean up batter" because BallotPoint does not appear to provide mail ballot services.

<u>The DOL will have a conflict of interest in handling any post-election protests</u>.

The DOL has positioned itself to be both the pre-decider of systems compliance and mid-election rule changes while also being the first-instance hearer of all post-election protests, many of which could be on the subjects already pre-decided or ordered

9

during the election. Candidates and members should be able to protest election conduct without fear that their complaints will suffer prejudicial handling and dismissal.

For these reasons, Hunnibell respectfully asks the Court to approve the Joint Motion of Case Resolution subject to the exceptions expressed and implied in the preceding discussion and according to the provisions of the Proposed Order attached as Exhibit A and submitted according to the Court's ECF Administrative Procedures Manual, ¶ II.F.2.

        Respectfully,

        s/ Mark L. Hunnibell
        Mark L. Hunnibell, pro se
        376 Black Rock Tpke
        Redding, CT 06896-1705
        203-938-7424

Date: April 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2007, I electronically filed the foregoing <u>Plaintiff-Intervenor's Response to Joint Motion for Case Resolution</u> with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

| | |
|---|---|
| TAMI C. PARKER<br>Assistant United States Attorney<br>Burnett Plaza, Suite 1700<br>801 Cherry Street, Unit 4<br>Fort Worth, Texas 76102 | SANFORD R. DENISON<br>Baab & Denison, LLP<br>Stemmons Place, Suite 1608<br>2777 N. Stemmons Freeway<br>Dallas, Texas 75207 |
| JEFFREY B DEMAIN<br>JONATHAN WEISSGLASS<br>Altshuler Berzon<br>177 Post Street, Suite 300<br>San Francisco, CA 94108 | EDGAR N. HAMES<br>STEVEN K. HOFFMAN<br>DAVID P. DEAN<br>James & Hoffman, P.C.<br>1101 17th Street, N.W., Suite 510<br>Washington, D.C. 20036 |
| YONA ROZEN<br>Gillespie Rozen Watsky & Jones<br>3402 Oak Grove Ave, Suite 200<br>Dallas, TX 75204 | |

<u>s/ Mark L. Hunnibell</u>
Mark L. Hunnibell, pro se
376 Black Rock Tpke
Redding, CT 06896-1705
203-938-7424